01/14/2005 15:28    17815950027           A P SCAPICCHIO MD                PAGE 02

To: Tony Scapicchio    Page 2 of 7         2005-01-20 00:37:04 (GMT)        (781) 846-0780  From: John S. Day, Esquire

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11573-RWZ

| | |
|---|---|
| ANTHONY P. SCAPICCHIO, M.D., <br> Plaintiff, <br> <br> v. <br> <br> MOUNT AUBURN PROFESSIONAL SERVICES, a Massachusetts non-profit corporation, MOUNT AUBURN HOSPITAL, a hospital incorporated in Massachusetts, for itself and as administrator of the Mount Auburn Hospital RetirementPlus 403(b) Plan, and THOMAS FABIANO, <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## AFFIDAVIT OF PLAINTIFF ANTHONY P. SCAPICCHIO, M.D.

I, Anthony P. Scapicchio, M.D., hereby state as follows:

1. I am, by training and experience, an emergency room medical physician.

2. I became the chief of emergency services for Mount Auburn Hospital ("MAH") in 1974.

3. I became the chief of ambulatory services for MAH in 1976.

4. I was promoted to chairman of the department of ambulatory services for MAH in 1987, when MAH elevated its ambulatory services division to hospital departmental status.

5. I became chairman emeritus, department of emergency medicine, for MAH in 1989, and remained a full-time staff physician at MAH.

APS

01/14/2005  15:28   17815950027           A P SCAPICCHIO MD                PAGE  03

To: Tony Scapicchio   Page 3 of 7         2005-01-20 00:37:04 (GMT)        (781) 846-0780  From: John S. Day, Esquire

6. As a full-time physician and administrator, I played a managerial role in all phases of MAH's operations, including design, planning, staffing, and clinical and fiscal integrity.

7. On approximately August 10, 1990, I entered into a written employment agreement ("the employment agreement") with Defendant Mount Auburn Professional Services. ("MAPS"), which had entered into an agreement with MAH to provide emergency medical services, medical teaching services, and hospital administrative services within MAH's department of emergency medicine.

8. MAH established, on January 1, 1990, a defined contribution, individual account retirement plan retirement plan known as the RetirementPLUS Plan ("the Retirement Plan") for its eligible employees, including me.

9. I had been personally involved in the development of the Retirement Plan in my capacity as head of emergency services at MAH, and I played a leading role in developing the Retirement Plan so that MAH could recruit highly qualified physicians.

10. The intent of the Retirement Plan developers was to ensure a fully funded retirement plan for MAH's employees, including me.

11. In August 1994, MAH began offering a new long term disability plan ("the LTD Plan") for its employees, including me.

12. I requested a written copy of the LTD Plan and/or the aforementioned detailed plan booklet on at least three occasions, but I never received any such written copy or detailed booklet.

2

13. I was informed by Nancy Stryker, a MAH administrator employed in the hospital's employee benefits office, that no written copy of the LTD Plan, or written summary or booklet of the same, would be provided to me or any other MAH employee before the open enrollment period expired on September 21, 1994.

14. Although I was not allowed an opportunity to see either a written copy of the LTD Plan or the detailed booklet regarding the same beforehand, I enrolled in the LTD Plan prior to the enrollment deadline of September 21, 1994.

15. I also purchased supplemental coverage under the LTD Plan, at my own expense.

16. I took an emergency 20-week medical leave of absence from my duties at MAH in 1995, due to progressive major depression; my last date of work at MAH was January 12, 1995.

17. As a result of my lack of improvement while on my emergency medical leave of absence, and upon the recommendation of MAH employees, I applied for long term disability status pursuant to the LTD Plan on April 20, 1995, when I was 58 years of age.

18. My annual compensation as of 1995, when I went on disability, was $161,232.72.

19. Since my repeated requests for a copy of the LTD Plan and/or a copy of the detailed booklet referenced in Susan Glover's August 18, 1994 memorandum were never satisfied, I needed and sought information and guidance from MAH's employment benefits office while I was contemplating whether I should apply for long-term disability benefits under the LTD Plan.

20. One of the MAH employees who worked in the MAH benefits office, Nancy Stryker, initially informed me that I would receive long term disability payments until death.

21. I realized that it was unlikely my disability benefits would last until my death, so I asked Ms. Stryker to confirm this issue with a representative from Liberty Mutual Insurance Company, which funded the LTD Disability Plan on behalf of MAH.

22. Ms. Stryker subsequently telephoned the Liberty Mutual representative while I remained in her office.

23. As a result of the telephone discussion between Nancy Stryker and the Liberty Mutual representative, I learned that my disability benefits would only continue until I reached the age of 65 years.

24. Ms. Stryker subsequently encouraged me to apply for benefits under the LTD Plan, and she told me that MAH would continue to make employer contributions to my retirement account until I reached the age of 65 years.

25. In my application for long term disability benefits, I acknowledged that, due to my condition of progressive major depression, I was no longer able to fulfill my professional duties as a physician.

26. By letter dated July 10, 1995, I received written notification that my application for long-term disability payments had been approved.

27. Under the supplemental terms of the LTD Plan as purchased by me, I was entitled to commence disability payments on April 13, 1995, which was ninety (90) days after my first date of disability.

*APS* (signature)

28. My payments under the LTD Plan had an effective commencement date of April 13, 1995.

29. I continued to request a copy of the LTD Plan.

30. By letter dated August 9, 1995, I was provided with a copy of the long-term disability contract between MAH and Liberty Mutual and notified, for the first time, that the LTD Plan included a two-year limitation for disability caused by mental illness; stated differently, the LTD Plan only covers disability caused by mental illness, such as depression, for two years following the allowance of disability benefits.

31. As a result of the two year limitation in the LTD Plan for disability caused by mental illness, my payments under the LTD Plan were discontinued on April 13, 1997.

32. My long term disability benefits were restored in January 1998, when I was diagnosed as being disabled due to obstructive sleep apnea and daytime somnolence.

33. After my long term disability coverage was restored in January 1998, I remained on long-term disability under the LTD Plan until December 2002, when I reached the age of 65 years.

34. On December 18, 2002, my status as a disabled employee ceased, because I reached the age of 65 years on that date.

35. MAH continued to pay me, and issue W-2 forms to me, from the time I went on long term disability status in 1995 until the time I reached the age of 65 years in December 2002.

5

36. Although my disability benefits under the LTD Plan commenced in April 1995, MAH continued to fund my retirement account through employer contributions, in accordance with the Retirement Plan, through July 1995.

37. On August 2, 2002, I learned, for the first time, that MAH stopped making contributions to my account under the Retirement Plan in approximately August 1995.

38. Under cover of letter dated January 31, 2003, Thomas Fabiano provided me – for the first time – with the summary plan description for the LTD Plan that had been promised in Susan Glover's August 18, 1994 memorandum; the summary plan description indicated a publication date of June 15, 1995, approximately 6 months after I began my emergency medical leave of absence and approximately 3 months after I applied for benefits under the LTD Plan.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY
THIS 20 DAY OF JANUARY, 2005.

Anthony P. Scapicchio, M.D.

CERTIFICATE OF SERVICE

I, John S. Day, hereby certify that on the 21st day of January, 2005, I caused a copy of the foregoing to be served, by electronic filing, upon Philip M. Cronin, Peabody & Arnold, 30 Rowes Wharf, 6th Floor, Boston, Massachusetts 02110.

/s/
John S. Day

6