FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
FOR THE      2005 JAN 21 A 10: 2
DISTRICT OF MASSACHUSETTS

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| ANTHONY P. SCAPICCHIO<br>Plaintiff<br><br>v.<br><br>MOUNT AUBURN PROFESSIONAL<br>SERVICES, MOUNT AUBURN HOSPITAL,<br>as administrator of the Mount Auburn Hospital<br>RetirementPlus 403(b) Plan, and THOMAS<br>FABIANO<br>Defendants | CIVIL ACTION NO. 04-11573-RWZ |

**MEMORANDUM OF THE DEFENDANTS MOUNT AUBURN PROFESSIONAL
SERVICES, MOUNT AUBURN HOSPITAL, AS ADMINISTRATOR OF THE MOUNT
AUBURN RETIREMENTPLUS 403(b) PLAN, AND THOMAS FABIANO IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

## STATEMENT OF THE CASE

This is an action brought under the Employee Retirement Income Security Act for

alleged benefits. 29 U.S.C. § 1132. The plaintiff is Anthony P. Scapicchio, M.D., hereinafter

referred to as Scapicchio, a former employee on the medical staff of Mount Auburn Hospital.

The defendants are Mount Auburn Professional Services, Mount Auburn Hospital as

administrator of Mount Auburn RetirementPlus 403(b) Plan and Thomas Fabiano. They are

collectively referred to hereinafter as Mount Auburn Hospital. The Plan known as the

RetirementPlus Plan was not named as a defendant. The RetirementPlus Plan is hereinafter

referred to as the Plan.

Mount Auburn Hospital filed an Answer denying that Scapicchio was entitled to any

benefits under the Plan. Mount Auburn also asserted affirmative defenses including that the

administrator of the Plan has full discretion to interpret and apply any Plan provision and can adopt reasonable rules and regulations for the administration of the Plan and the administrator's decisions are binding unless plainly wrong or clearly unfair.

At a scheduling conference held by the Court on November 10, 2004, the Court ordered filing of cross motions for summary judgment by January 21, 2005, and oppositions to the motions by February 4, 2005. The Court will decide the case on papers submitted.

## STATEMENT OF FACTS

References are to the affidavit of Thomas Fabiano. References to exhibits are those exhibits attached to the Fabiano affidavit.

On August 26, 1974, Scapicchio applied to Mount Auburn Hospital for medical staff membership (Exhibit 2). He agreed to abide to the rules and regulations of the medical staff (Exhibit 3). On October 31, 1974, Mount Auburn Hospital appointed Scapicchio to the courtesy staff in the Department of General Surgery (Exhibit 4).

Prior to December 31, 1989, Mount Auburn Hospital had a defined benefit pension plan. Upon the termination of that plan, Mount Auburn Hospital adopted the Plan effective January 1, 1990 (Affidavit ¶ 21). The Plan is a defined contribution, individual account plan (Exhibit 1).

Between January 1, 1990 and January 12, 1995, Scapicchio regularly worked at Mount Auburn Hospital (Affidavit ¶ 13). Scapicchio applied for long-term disability benefits to Liberty Life Assurance Company, hereinafter Liberty, on April 20, 1995 (Exhibit 4). In his application he claimed that his illness was progressive depression which started on January 13, 1995. His attending physician's statement to Liberty dated April 14, 1995 said that his present condition was "major depression" and that he was disabled from his regular occupation (Exhibit 5). Liberty on July 10, 1995 approved his application (Exhibit 8). He received the benefits under a group disability income policy issued by Liberty. The policy provided benefits for full-time

2

employees regularly scheduled to work at least 40 hours per week or part-time employees regularly scheduled to work at least 30 hours per week. Because Scapicchio was less than age 60 at the time of disability, the maximum benefits period for the continuation of long-term disability was to age 65. His benefits were 70% of his basic monthly earnings, but not to exceed a maximum monthly benefit of $15,000. The policy provides for a 24-month limitation for mental illness disabilities unless Scapicchio continued to be disabled and becomes confined for mental illness.

The Plan (Exhibit 1) provides that it is a retirement plan for contributions by Mount Auburn Hospital and voluntary contributions by participants. Mount Auburn Hospital makes contributions for employees who are regularly scheduled to work at least 20 hours per week and have worked at the hospital for at least two years. The amount of the contribution is a percentage of pay (Exhibit 1, Article 1 ¶ 1.3). In order to be eligible to receive hospital contributions, Scapicchio had to be an eligible employee and satisfy age and service requirements. In order to be eligible he had to be regularly scheduled to work at least 20 hours per week (Exhibit 1, Article 2 ¶ 2.1). The amount of the hospital contribution for an employee with 20 or more years of employment is a percentage contribution of 8% of his pay. Pay "includes all compensation received" by Scapicchio from Mount Auburn Hospital "for the performance of services" (Exhibit 1, Article 2, ¶ 2.3). The Plan provides that Scapicchio's pay will be determined before any reduction in taxable income for employee contributions on a salary reduction basis under the Plan, but that the maximum compensation taken into account under the Plan during any year is limited to $150,000 (Exhibit 1, Article 2 ¶ 2.3). The Plan also provides that the hospital's contribution stops when Scapicchio was no longer an eligible employee (Exhibit 1, Article 2, ¶ 2.4).

Under the Mount Auburn Hospital Personnel Policy, Scapicchio was entitled to a paid leave of absence for a 20-week period. Between January 1, 1995 and September 30, 1995 Scapicchio received the paid leave of absence by contributions to his Fidelity Investment 403(b) account (Affidavit ¶¶ 24, 25, 26).

The medical staff by-laws provide in Article VI, Section 7 that "any member of the medical staff who fails to return from a leave of absence within twelve months of departure shall be deemed to have resigned" (Exhibit 12, p. 20, Article VI § 7).

On February 8, 1996, Scapicchio wrote to Mount Auburn Hospital that he was not currently capable of coming back to his role as a physician and, therefore, resigned from the medical staff (Exhibit 13).

Scapicchio received retirement savings statements from Fidelity Investments on a quarterly basis. These statements showed, for each quarter, the amount of employer contributions to his 403(b) account. After the payment of the paid leave absence which ended September 30, 1995, his statements show for each quarter after October 1, 1995 that Mount Auburn Hospital made no contributions to his 403(b) account (Affidavit, ¶¶ 24, 26, 27) (Exhibit 20).

Scapicchio was aware that Mount Auburn Hospital had not made any contributions to his 403(b) plan. He wrote on August 12, 2002: "My records and the records of carriers for the 403(b) plans (Fidelity and Lincoln Life) show that MAH stopped making employer contributions to my 403(b) plan, WHY?"

The Plan Administrator on October 15, 2002 construed Scapicchio's August 12, 2002 letter as a claim for benefits. He pointed out that, under Section 2.3 of the Plan, the Hospital calculates its defined contribution as a percentage of the employee's pay which is compensation

4

paid by the Hospital for the performance of services. He concluded that long-term disability payments made by Liberty do not come within that definition (Exhibit 15).

Scapicchio's counsel on October 24, 2002 wrote the Administrator that he wanted the administrator "to permit Dr. Scapicchio to present a newly formulated claim" (Exhibit 16). There was correspondence on December 20, 2002 (Exhibit 17) and December 23, 2002 (Exhibit 18). The Plan Administrator made a final decision denying the claim by letter dated January 21, 2003 (Exhibit 19).

Scapicchio reached age 65 on December 18, 2002. At that time, pursuant to the Liberty policy, his disability payments terminated (Exhibit 9, § 1). The Plan in Article V, Section 5.2 states he could choose to have the value of his 403(b) account with Fidelity Investment paid in any form of benefit made available by Fidelity Investment Company subject to the annuity requirements of Section 5.3 (Exhibit 1, Article V, § 5.2).

## ARGUMENT

1.    The Plan Gives the Plan Administrator Discretion to Interpret the Plan and Therefore the Standard of Review is Whether the Administrator's Decisions is Arbitrary and Capricious.

Mount Auburn Hospital is designated by the Plan as Plan Administrator. (Exhibit 1, Article VI, ¶ 6.1). Mount Auburn Hospital may appoint an individual to run the plan. It appointed Thomas Fabiano, Director of Human Resources. (Affidavit, ¶ 3).

Article V, ¶ 6.2 provides as follows:

> "Administrator of Plan." The administrator has all power and authority necessary or appropriate to administer the Plan. The administrator has full discretion to interpret and apply any plan provision and can adopt reasonable rules and regulations for the administration of the plan. The administrator's decisions are binding unless wrong or clearly unfair."

5

In a denial of benefits claim under 29 U.S.C. §1132(a)(1)(B), the standard of review depends on whether the fiduciary has discretionary authority to determine eligibility for benefits or construe the terms of the plan and if so, the standard of review is whether fiduciary's decision was arbitrary or capricious. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989), Recupero v. New England Telephone and Telegraph Co., 118 F.3d 820, 827 (1st Cir. 1997).

The arbitrary and capricious standard asks whether the decision is plausible in light of the record as a whole and supported by substantial evidence in the record. Pari-Fasano v. ITT Hartford Life & Accident Insurance Co., 230 F.3d 415, 419 (1st Cir., 2000), Doyle v. Paul Revere Life Insurance Co., 144 F.3d 181, 184 (1st Cir. 1998).

As long as the fiduciary's decision is plausible and supported by the record as a whole, existence of contradictory evidence or another interpretation does not render the decision arbitrary and capricious. Leahy v. Raytheon Company, 315 F.3d 11, at 19 (1st Cir. 2003).

The plan gives the plan fiduciary "full discretion to interpret" the plan. It further made that decision "binding unless wrong or clearly unfair."

2.    The Plan Administrator's Decision was Reasonable and Plausible.

Scapicchio on August 12, 2002 wrote the President of Mount Auburn Hospital a somewhat confused and garbled letter. (Exhibit 14).

Scapicchio started his letter by stating that "I am a MAH Employee." He was not. He had resigned from the medical staff on February 8, 1996. (Exhibit 13). He then said he had "serious questions about both those benefit plans." Mount Auburn Hospital, however, had only one retirement plan. (Exhibit 1). He wanted to know the differences between "voluntary and mandatory retirement age." He complained about his long-term benefit plan with Liberty and suggested that his disability benefits would stop at age 60, not 65. In fact, Liberty paid his

disability benefits continuously from January 13, 1995 until he reached age 65 on December 19, 2002. (Affidavit, ¶ 16).

Because Scapicchio asserted that his records showed "That MAH stopped making employee contribution to my 403B plan" and asked "WHY," Mount Auburn Hospital considered his letter a claim for benefits under the Plan. (Exhibit 15).

The Plan Administrator's decision was not only plausible but an interpretation fully consistent with the plain words of the plan. Miles v. New York State Teamsters Conference, 698 F.2d 593, 599 (2d Cir., 1983).

Scapicchio applied for long-term disability benefits from Liberty on April 20, 1995. (Exhibit 4). He said he became disabled on January 13,1995. His physician's statement gave a diagnosis of "major depression" and certified that he was totally disabled from his regular occupation. (Exhibit 5). He received benefits continuously from January 15, 1995 until he reached age 65 on December 19, 2002. (Affidavit, ¶ 16).

The Mount Auburn Hospital Medical Staff By-Laws provide that: "Any member of the medical staff who fails to return from a leave of absence after 12 months of departure shall be deemed to have resigned." (Exhibit 12, Art. 7, p. 20).

Scapicchio's leave of absence expired January 13, 1996. Scapicchio wrote Mount Auburn Hospital on February 8, 1996 stating: "My condition is such that I require a more prolonged disability leave than I thought was initially necessary. I am not currently capable of coming back to my role as physician in your department." He then acknowledged that under the medical staff by-laws, he had resigned. (Exhibit 13). Thus, from January 13, 1995, he no longer performed services and from January 13, 1996, he was not even an employee.

7

Only "employees who are regularly scheduled to work at least 20 hours per week" are eligible to receive contributions from Mount Auburn Hospital under the Plan. (Exhibit 1, Art. II, ¶ 2.1). Scapicchio was not "regularly scheduled to work" after January 13, 1995.

Mount Auburn Hospital's defined contribution was based on the "last pay period that you participate." The Plan provides: "Your pay includes all compensation received by you from the hospital during the pay periods that you participate for the performance of services including over time pay, shift differential, bonuses and incentive pay." (Exhibit 1, Article II, ¶ 2.3).

Mount Auburn Hospital correctly interpreted this language to exclude disability benefits.

The definition of "pay" is "compensation received by you from the hospital." The disability payments were not compensation from the hospital. They were not compensation. They were disability payments under a Liberty long-term disability policy. The payments were not compensation "from the hospital." They were from Liberty, which itself possessed "the authority, in its sole discretion to construe the terms of this policy and to determine benefit eligibility." (Exhibit 9, § 7). Mount Auburn Hospital had no role in Scapicchio's entitlement to disability benefits.

Furthermore, pay is defined as compensation "for the performance of services." Scapicchio performed no services for Mount Auburn Hospital after January 13, 1995.

There was no ambiguity in the Plan. The Plan states: "Cessation of contribution. The hospital's contribution to the Plan will stop for any pay period during which you are no longer an eligible employee." (Exhibit 1, Art. II, ¶ 2.4).

The Plan Administrator in his decision of October 15, 2002 correctly interpreted these provisions. He observed that the hospital's contribution is based on "pay," that pay is

8

compensation for services, that the Liberty benefits were not hospital payments and that Scapicchio was not performing services for the hospital. (Exhibit 15).

There was nothing in the responses by Scapicchio's then attorney that in any way suggested that Mount Auburn Hospital's interpretation was arbitrary and capricious. To the contrary, his letter expressed the desire to "present a newly formulated claim." (Exhibit 16). He never submitted a newly formulated claim.

      3.      The Claim is Barred by the Statute of Limitations.

Scapicchio's claim for benefits under 29 U.S.C. §1132(a)(1)(B) is not timely under the statute of limitations because he first knew of his alleged claim no later than April 1995 but did not file a claim for benefits until August 12, 2002, one year and four months after the applicable six-year limitations period had run. The ERISA statute itself does not contain a limitations period applicable to claims for benefits under §1132(a)(1)(B). Harrison v. Digital Health Plan, 183 F.3d 1235, 1238 (11th Cir. 1999); Union Pacific R.R. Co. v. Beckham, 138 F.3d 325, 330 (8th Cir. 1998). Where a federal statute does not provide a limitations period, courts look to the most analogous state statute of limitations provided that they are "not inconsistent with federal law or policy." Wilson v. Garcia, 471 U.S. 261, 266-67 (1985);. Almost every court that has considered ERISA claims for benefits under §1132(a)(1)(B) has likened the action to a contract law claim. Harrison, 183 F.3d at 1240 (citing precedents from the 4th, 5th, 6th, 7th, 8th, 9th, 10th Circuits). Thus, the statute of limitations applicable to Scapicchio's claim is the six-year statute of limitations applicable to Massachusetts contract actions. See Mass. Gen. L., c. 260, §2.

Scapicchio's claim accrued in April 1995 when he received the Fidelity quarterly statement showing no employer contribution other than paid leave of absence. (Exhibit 20.) Even though the limitations period is drawn from state law, the question of accrual is a matter of federal common law. Union Pacific, 138 F.3d at 330; Laurenzano v. Blue Cross and Blue Shield

of Mass. Inc. Retirement Income Trust, 134 F.Supp.2d 189, 207 (D. Mass. 2001). Under federal law, the accrual of claims is governed by the discovery rule; that is, claims accrue when the plaintiff discovers or, with diligence should have discovered, the injury that is the basis of the litigation." Terry v. IBEW, 201 F.3d 44, 48 (2d Cir. 1999) (citing Union Pacific, 138 F.3d at 330); Laurenzano, 134 F.Supp.2d at 208. Application of the discovery rule to ERISA cases amounts to asking when there has been "a clear repudiation by the plan that is known, or should be known, to the plaintiff – regardless of whether the plaintiff has filed a formal application for benefits." Terry, 201 F.3d at 48 (noting concurrence of 7th, 8th, and 9th Circuits); See also Laurenzano, 134 F.Supp.2d at 209 ("a denial of benefits need not be formal, so long as the denial is clear").

Under this rule, Scapicchio's claim accrued in April 1995, the earliest time he knew or should have known he was not receiving benefits. Mount Auburn Hospital ceased employer contributions on January 1, 1995. (Aff. ¶26.) Mount Auburn Hospital's contributions to the Fidelity Investments account for the period between January 1, 1995 and September 30, 1995 were for paid leave of absence. (Aff., ¶¶25, 25) Scapicchio's theory is that Mount Auburn Hospital in the same period should have also paid 8% of his Liberty disability benefits into the Fidelity account. His monthly benefit was $8,680.70. (Exhibit 8.) Thus, Scapicchio says he should have received an additional $694.45 per month or quarterly benefits of $2,083.36. Consequently, upon receipt of his statements from Fidelity Investments for the period January 1, 1995 to March 31, 1995, Scapicchio knew or should have known that Mount Auburn Hospital was not contributing to his §403(b) account at Fidelity Investments. (Aff., ¶27.) Thus, for seven years and four months Scapicchio was not receiving benefits to which he now claims he was

10

entitled.  He acknowledged in his August 12, 2002 letter that his and Fidelity's records showed

no employer contributions to his 403(b) plan.  (Exhibit 14.)

Measuring the accrual of Scapicchio's cause of action as of April 1995 is consistent with

cases applying the discovery rule in the ERISA context.  An ERISA claim can accrue "before a

formal denial, and even before a claim for benefits is filed."  Bolduc v. National Semiconductor

Corp., 35 F.Supp.2d 106, 119 (D.Me., 1998).

The Plan Administrator, in his decision of January 21, 2003, concluded that the Fidelity

Investment 1995 Benefit Statements showed that Mount Auburn Hospital was not making

contributions and therefore the claim was barred by the six-year statute of limitations.  (Exhibit

19)

That ruling was not arbitrary and capricious.  The Plan Administrator's decision on the

statute of limitation is binding on Scapicchio.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court order the

complaint dismissed.

> MOUNT AUBURN PROFESSIONAL
> SERVICES, MOUNT AUBURN HOSPITAL,
> as the administrator of MOUNT AUBURN
> RETIREMENTPLUS 403(b) PLAN and
> THOMAS FABIANO
>
> By their Attorneys,
>
> Philip M. Cronin, BBO #106060
> Michael Cedrone, BBO #657708
> PEABODY & ARNOLD LLP
> 30 Rowes Wharf, 6th Floor
> Boston, MA  02110
> (617) 951.2065

603908_1
5436-90871