UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11573-RWZ

_____
ANTHONY P. SCAPICCHIO, M.D.,            )
        Plaintiff,            )
                               )
v.                                     )
                               )
MOUNT AUBURN PROFESSIONAL              )
SERVICES, a Massachusetts non-         )
profit corporation, MOUNT AUBURN       )
HOSPITAL, a hospital incorporated      )
in Massachusetts, for itself and as    )
administrator of the Mount Auburn      )
Hospital RetirementPlus 403(b)         )
Plan, and THOMAS FABIANO,              )
        Defendants.           )
_____)

**OPPOSITION OF PLAINTIFF ANTHONY P. SCAPICCHIO, M.D. TO THE MOTION FOR SUMARY JUDGMENT FILED BY THE DEFENDANTS**

Now comes the Plaintiff, Anthony P. Scapicchio, M.D., and, in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, submits this memorandum in opposition to the motion for summary judgment that has been filed by the Defendants. As set forth in more detail below, the Defendants are not entitled to summary judgment on the claim brought by Dr. Scapicchio pursuant to the Employee Retirement Income Security Act of 1974, as codified at 29 U.S.C. 1001 *et seq.* ("ERISA"), because, without limitation, (1) the Defendants' failure to properly fund Dr. Scapicchio's retirement account constitutes a wrongful violation of both ERISA and the terms of the relevant employee retirement program provided by Defendant Mount Auburn Hospital ("MAH") to its employees, including Dr. Scapicchio and (2) Dr. Scapicchio's ERISA claim is not barred by any potentially applicable statute of

limitations, because the claim did not accrue until, at the earliest, October 15, 2002, when the Defendants first denied Dr. Scapicchio's claim for retirement benefits.

Further, summary judgment also is not appropriate because the Defendants' motion reveals a significant factual error, by the Defendants, regarding Dr. Scapicchio's employment status with MAH. More specifically, the Defendants' motion suggests that Dr. Scapicchio's resignation from the active medical staff at MAH in 1996 terminated his employment with MAH when, in fact, he continued to be an employee – albeit a disabled employee – of MAH until December 18, 2002, when he reached his 65th birthday.

Finally, the Defendants' motion for summary judgment utterly ignores Dr. Scapicchio's claim for relief pursuant to the Americans with Disabilities Act, as codified at 42 U.S.C. 12101 *et seq*. ("ADA"), which is a separate and independent cause of action that has been asserted by Dr. Scapicchio in this litigation.

## STATEMENT OF FACTS

Dr. Scapicchio is, by training and experience, an emergency room medical physician who became an employee of MAH on or about September 1, 1974. See Affidavit of Plaintiff Anthony P. Scapicchio ("Scapicchio Aff."), which has been filed herewith, at ¶¶1 and 2. MAH confirmed its employment of Dr. Scapicchio by letter dated August 6, 1974. See Scapicchio Aff., at ¶2, and Exhibit A attached thereto. MAH's August 6, 1974 letter to Dr. Scapicchio suggested that Dr. Scapicchio submit his credentials for appointment to the medical staff in the division of surgery, and Dr. Scapicchio followed this suggestion. See Scapicchio Aff., at ¶¶3 and 4, and Exhibit A thereto. Dr. Scapicchio subsequently was appointed to the courtesy medical staff at

MAH on or about October 31, 1974, approximately 2 months after he began his employment with MAH.  See Scapicchio Aff., at ¶4, and Exhibit B thereto.

Dr. Scapicchio's appointment to the MAH medical staff was on a year-to-year basis, subject to the discretion of the MAH medical staff executive committee and the MAH board of trustees.  See Scapicchio Aff., at ¶6.  On October 28, 1975, approximately one year after he was initially appointed to the MAH courtesy medical staff, Dr. Scapicchio was promoted to the active medical staff, with the rank of assistant surgeon in the MAH Department of General Surgery.  See Scapicchio Aff., at ¶7, and Exhibit C thereto.  Dr. Scapicchio's status as an employee of MAH was, at all times relevant to this litigation, separate and distinct from his year-to-year appointment to the MAH medical staff.  See Scapicchio Aff., at ¶5.

The MAH medical staff operated, at all times relevant to this litigation, under a separate set of MAH medical staff by-laws that were separate and distinct from MAH's employment agreement with Dr. Scapicchio.  See Scapicchio Aff., at ¶8.  Moreover, at all times relevant to this litigation, any licensed physician was eligible to seek appointment to the MAH medical staff, regardless of whether the physician was an employee of MAH. See Scapicchio Aff., at ¶9.

MAH established, on January 1, 1990, a defined contribution, individual account retirement plan retirement plan known as the RetirementPLUS Plan ("the Retirement Plan") for its eligible employees, including Dr. Scapicchio.  See Scapicchio Aff., at ¶10, and Exhibit D thereto.  The Retirement Plan provides that MAH will make an employer contribution, based upon percentage of salary, into an employee's retirement account. See Scapicchio Aff., at ¶11, and Exhibit D thereto.

In January 1995, Dr. Scapicchio took an emergency 20-week medical leave of absence from my duties at MAH, due to progressive major depression, and his last date of work at MAH was January 12, 1995. See Scapicchio Aff., at ¶12. Dr. Scapicchio's condition did not improve over the course of his 20-week emergency medical leave of absence and, upon the recommendation of MAH employees, he applied for long term disability status, on April 20, 1995, pursuant to the long term disability plan provided by MAH to its employees ("the LTD Plan"), including Dr. Scapicchio. See Scapicchio Aff., at ¶13.

Dr. Scapicchio's application for long-term disability status under the LTD Plan was approved, and his long-term disability benefits were effective as of April 13, 1995. See Scapicchio Aff., at ¶14. The basis for this effective date was that the terms of the LTD Plan required a 90-day waiting period before an employee was eligible for disability status, and the 90-day waiting period for Dr. Scapicchio commenced when he began his emergency medical leave of absence from MAH on January 13, 1995. Id. At the time Dr. Scapicchio applied for long-term disability status under the LTD Plan, his 20-week emergency medical leave of absence had expired, and he had been informed by Nancy Stryker, an administrator in the MAH employee benefits office, that MAH would continue to fund his retirement account, pursuant to the Retirement Plan, while he remained a disabled employee. See Scapicchio Aff., at ¶15.

On February 8, 1996, Dr. Scapicchio resigned his appointment to the MAH medical staff, pursuant to the medical staff by-law that required such a resignation following a leave of absence of more than one year. See Scapicchio Aff., at ¶17, and Exhibit E thereto. Dr. Scapicchio sent a letter of resignation to the chairman of the

4

department of emergency medicine, and this letter specifically stated that Dr. Scapicchio was resigning from the "medical staff". Id. Dr. Scapicchio's resignation from the medical staff had no bearing upon his employment status with MAH. Id. Indeed, Dr. Scapicchio's February 8, 1996 letter of resignation form the medical staff explicitly stated that Dr. Scapicchio could "reapply for staff privileges at any time [his] condition stabilizes…." See Exhibit E to Scapicchio Aff.

Dr. Scapicchio remained an employee of MAH after he resigned from the medical staff. See Scapicchio Aff., at ¶¶5 and 16. More specifically, Dr. Scapicchio remained an employee of MAH, albeit a disabled employee, until December 18, 2002, when he reached his 65th birthday. See Scapicchio Aff., at ¶16.

Although Dr. Scapicchio's disability benefits under the LTD Plan commenced in April 1995, MAH continued to fund his retirement account through employer contributions to his retirement account, in accordance with the Retirement Plan, through his Fidelity Investments retirement account statement period ending in September 1995. See Scapicchio Aff., at ¶18, and Exhibit F thereto. The employer contributions made by MAH to Dr. Scapicchio's retirement account from January through September 1995 do not constitute contributions for his 20-week paid leave of absence, which expired in April 1995. See Scapicchio Aff., at ¶19.

The Defendants wrongfully failed to fund Dr. Scapicchio's retirement account in accordance with the terms of the Retirement Plan after he became disabled in 1995. See Scapicchio Aff., at ¶20. Consequently, Dr. Scapicchio's retirement account currently is under-funded. Id.

As noted by the Defendants in their motion for summary judgment, Dr. Scapicchio sent a letter, dated August 12, 2002, to the president of MAH, in which he inquired as to why his retirement account had not been funded by MAH since 1995. See Affidavit of the Defendants in Support of their Motion for Summary Judgment ("Defendants' Aff."), at ¶17, and Exhibit 14 thereto. Defendant Thomas Fabiano, in his capacity as administrator of the Retirement Plan, responded to Dr. Scapicchio's August 12, 2002 correspondence with a letter dated October 15, 2002. See Defendants Aff., at ¶18, and Exhibit 15 thereto. In his October 15, 2002 letter, Mr. Fabiano took the position that the Defendants had no obligation to fund Dr. Scapicchio's account because, when Dr. Scapicchio went on disability leave, he no longer was entitled to employer contributions under the Retirement Plan because he was no longer receiving compensation from MAH. See Exhibit 15 to Defendants' Aff. Mr. Fabiano's October 15, 2002 letter specifically referred to "an employee who is on disability leave," and made no indication that Dr. Scapicchio's status as an employee of MAH ceased when he became disabled. Id.

Mr. Fabiano sent a second letter, dated December 20, 2002, to Dr. Scapicchio's then-counsel, in which he asserted that Dr. Scapicchio was not entitled to employer contributions because he "ceased to be an 'eligible employee' under the terms of the [Retirement] Plan in January 1995 when he ceased work." See Defendants Aff., at ¶20, and Exhibit 17 thereto. Mr. Fabiano subsequently sent a third letter, dated January 21, 2003, in which he stated that Dr. Scapicchio was not entitled to employer contributions under the Retirement Plan because he ceased providing services to MAH when he became disabled in January 1995. See Defendants Aff., at ¶22, and Exhibit 19 thereto.

6

In their motion for summary judgment, the Defendants have now raised, for the first time, the theory that Dr. Scapicchio is not entitled to employer contributions because, as noted above, he resigned from the MAH medical staff on February 8, 1996. As also noted above, however, Dr. Scapicchio's resignation from the medical staff had no bearing on his employment with MAH, and he remained an employee of MAH until December 18, 2002, when he turned 65 years old. See Scapicchio Aff., at ¶¶16 and 17, and Exhibit E thereto.

Finally, and as acknowledged by the defendants in their motion for summary judgment, the terms of the Retirement Plan state that Mr. Fabiano's decisions as the Retirement Plan administrator are binding "unless plainly wrong or clearly unfair."

**ARGUMENT**

1. <u>Defendant Thomas Fabiano did not possess unfettered discretion to interpret and rule upon claims made under the Retirement Plan; rather, Mr. Fabiano's decisions were binding unless "plainly wrong or clearly unfair," and his denial of Dr. Scapicchio's claim was both plainly wrong and clearly unfair.</u>

The terms of the Retirement Plan clearly and unambiguously state, at Article V, ¶6.2, that the Plan "administrator's decisions are binding unless plainly wrong or clearly unfair." See Exhibit D to Scapicchio Aff. Consequently, it is axiomatic that a decision by the Retirement Plan administrator is <u>not</u> binding, to the extent the decision is either plainly wrong or clearly unfair. Moreover, this limitation upon the Retirement Plan administrator's discretionary authority removes the administrator's decision-making authority from the deferential arbitrary and capricious standard of review. See, e.g., *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000) (conferral of discretion to an ERISA plan administrator is not to be assumed, especially in light of the importance of ERISA plan benefits to modern employees). See, also, *Rodriquez-Abreu v.*

7

*Chase Manhattan Bank, N.A.*, 986 F.2d 580, 583 (1st Cir. 1993) ("a benefits plan must clearly grant discretionary authority to the administrator before decisions will be accorded the deferential, arbitrary and capricious, standard of review"). Consequently, Mr. Fabiano's denial of Dr. Scapicchio's claim for employer contributions pursuant to the Retirement Plan is subject to the less deferential de novo review standard, and the denial of claims is without merit because, as explained below, it is both plainly wrong and clearly unfair. *Id*.

The alleged factual basis most recently asserted by the Defendants as justification for their denial of Dr. Scapicchio's claim for retirement benefits is that, since Dr. Scapicchio resigned from the medical staff at MAH on February 8, 1996, he was no longer an employee of MAH and, therefore, he was no longer eligible for participation in the Retirement Plan. As set forth above, this argument is demonstrably inaccurate, because Dr. Scapicchio's resignation from the medical staff had no bearing on his employment status with MAH, which continued until December 18, 2002. See Scapicchio Aff., at ¶¶16 and 17, and Exhibit E thereto. Moreover, this alleged justification for the Defendants' denial of Dr. Scapicchio's claim for benefits is being raised by the Defendants, for the first time, in their motion for summary judgment; if the Defendants' argument had any factual or legal merit, then, presumably, it would have been raised in at least one of the Defendants' earlier communications with Dr. Scapicchio regarding his claim.

The Defendants' earlier argument regarding Dr. Scapicchio's claim was that, upon the commencement of Dr. Scapicchio's disability payments, he ceased being compensated by MAH. According to the Defendants, since Dr. Scapicchio purportedly

8

was no longer being compensated by MAH during his period of disability, MAH had no obligation to continue funding Dr. Scapicchio's retirement account. The Defendants' position is facially self-serving, and ignores clear documentary and regulatory evidence that the long-term disability benefits paid to Dr. Scapicchio between 1995 and 2002 constitute compensation from his employer.

More specifically, MAH issued W-2 forms to Dr. Scapicchio, from 1995 until 2002, that identified MAH and/or Defendant Mount Auburn Professional Services ("MAPS") as Dr. Scapicchio's employer and reflected compensation paid to Dr. Scapicchio by MAH and/or MAPS from 1995 until 2002. These W-2 forms also listed employer identification numbers for MAH and/or MAPS, and they all identified Dr. Scapicchio as the employee to whom compensation was paid. Dr. Scapicchio has furnished these W-2 forms to the Court, as Exhibit S to the Statement of Undisputed Material Facts that Dr. Scapicchio submitted in support of his own Motion for Summary Judgment.

Moreover, the Department of Labor has promulgated regulations, set forth at 29 C.F.R. 2530.200b-2, that pertain to employee pension benefit plans and state that, with regard to an employer's payment for employee service during a plan year, "a payment shall be deemed to be made by or due from an employer regardless of whether such payment is made by or due from the employer directly, or indirectly through, among others, a trust fund, or insurer, to which the employer contributes or pays premiums and regardless of whether contributions made or due to the trust fund, insurer or other entity are for the benefit of particular employees or are on behalf of a group of employees in the aggregate." See 29 C.F.R. 2530.200b-2(a)(2).

9

In sum, Mr. Fabiano's various, and shifting, justifications for denying Dr. Scapicchio's claim for retirement benefits are based upon inaccurate factual assumptions regarding the effect of Dr. Scapicchio's 1996 resignation from the medical staff and an unjustified refusal to acknowledge that MAH issued W-2 forms to Dr. Scapicchio from 1995 until 2002, while he remained a disabled employee of MAH.  Further, Mr. Fabiano's denial of benefits ignores the regulatory guidance set forth at 29 C.F.R. 2530.200b-2, which indicates that disability payments constitute compensation from an employer to its employee.  Consequently, Mr. Fabiano's denial of Dr. Scapicchio's claim for benefits cannot be binding upon Dr. Scapicchio, because the denial is both plainly wrong and clearly unfair.

2. <u>Even if Mr. Fabiano's decision-making under the Retirement Plan were subject to the arbitrary and capricious standard, his decision to deny Dr. Scapicchio's claim is arbitrary and capricious because it is neither reasonable nor supported by substantial evidence.</u>

Even if the arbitrary and capricious standard of review were deemed to apply to Mr. Fabiano's denial of Dr. Scapicchio's claim for benefits, Mr. Fabiano's denial would not pass judicial muster unless the denial was "reasonable and supported by substantial evidence." *Glista v. Unum Life Ins. Co. of America*, 378 F.3d 113, 126 (1st Cir. 2004), <u>citing</u> *Gannon v. Metro Life Ins. Co.*, 360 F.3d 211, 212-213 (1st Cir. 2004).  Mr. Fabiano has not satisfied this standard because, as set forth above, there is no evidence that Dr. Scapicchio's 1996 resignation from the MAH medical staff terminated Dr. Scapicchio's employment with MAH; in fact, the evidence actually establishes that Dr. Scapicchio's resignation from the medical staff had no bearing on his employment status with MAH, which continued until December 18, 2002.  <u>See</u> Scapicchio Aff., at ¶¶16 and 17, and

Exhibit E thereto.  See, also, W-2 forms issued by MAH and MAPS to Dr. Scapicchio from 1995 until 2002.

Moreover, Mr. Fabiano's earlier contention that the disability benefits received by Dr. Scapicchio do not constitute employer compensation is neither reasonable nor supported by substantial evidence, especially in light of the W-2 forms that MAH provided to Dr. Scapicchio between 1995 and 2002 and the regulatory guidance of 29 C.F.R. 2530.200b-2, which indicates that disability payments constitute compensation from an employer to its employee.

Consequently, Mr. Fabiano is personally liable to Dr. Scapicchio for all damages that Dr. Scapicchio has incurred, and continues to incur, as a result of Mr. Fabiano's unfounded, arbitrary, and capricious decision to deny Dr. Scapicchio's claim for retirement benefits.  *Glista*, 378 F.3d. at 125-126.

3.  <u>Dr. Scapicchio's claim is not barred by any potentially applicable statute of limitations, because the defendants did not deny Dr. Scapicchio's claim until, at the earliest, October 15, 2002.</u>

As conceded by the Defendants in their motion for summary judgment, ERISA contains no statute of limitations that applies to Dr. Scapicchio's claim for retirement benefits.  Moreover, the Retirement Plan does not contain any limitations period within its terms.  Nevertheless, the Defendants now contend that Dr. Scapicchio's claim is barred by the six-year statute of limitations applicable to Massachusetts contract actions, which is codified at M.G.L. c. 260, §2.  As set forth below, the Defendants' position is without merit because, without limitation, Dr. Scapicchio did not assert a claim for retirement benefits, and the Defendants did not deny the claim, until late 2002.

11

The Defendants' motion for summary judgment makes clear that they considered Dr. Scapicchio's August 12, 2002 letter to the president of MAH to be a claim for benefits under the Retirement Plan, and that they responded to this claim through Mr. Fabiano's October 15, 2002 denial letter to Dr. Scapicchio. Dr. Scapicchio and the Defendants subsequently engaged in additional discussions, both in writing and orally, regarding this issue, and Dr. Scapicchio filed suit in 2004. The Defendants do not contend that Dr. Scapicchio asserted any claim for benefits prior to August 12, 2002, and the record is devoid of evidence of any such earlier claim by Dr. Scapicchio.

Although the Defendants claim that the statute of limitations accrued in April 1995, when Dr. Scapicchio allegedly "received the Fidelity quarterly statement showing no employer contribution other than paid leave of absence"[1], their position is factually, and fatally, flawed for a variety of independent reasons. As an initial matter, the Retirement Plan made no provision for employer deposits to an employee's retirement account for a paid leave of absence, and the employer contributions made by MAH to Dr. Scapicchio's retirement account from January through September 1995 do not constitute contributions for his 20-week paid leave of absence, which expired in April 1995. See Scapicchio Aff., at ¶19, and Exhibits D and F thereto.

Further, even the decisional law cited by the Defendants in their motion for summary judgment makes clear that, before a claim under ERISA accrues, there must be at least some form of a <u>clear</u> denial of benefits. <u>See</u>, <u>e.g.</u>, *Terry v. IBEW*, 201 F.3d 44, 48 (2nd Cir. 1999 (ERISA claim accrues when there has been "a clear repudiation [of benefits] by the plan"); *Laurenzano v. Blue Cross and Blue Shield of Mass. Inc. Retirement Income Trust*, 134 F.Supp.2d 189, 207 (D.Mass. 2001) (before ERISA claim

accrues, denial of benefits must be "clear"). In this particular case, the Defendants indisputably did not effectuate a clear denial of Dr. Scapicchio's retirement benefits until, at the earliest, Mr. Fabiano's October 15, 2002 denial letter to Mr. Scapicchio. More specifically, the Defendants never informed Dr. Scapicchio, prior to October 2002, that they were going to terminate his retirement benefits, even though the Defendants knew Dr. Scapicchio was suffering from the mental illness of major depression and even though Nancy Stryker, an administrator in the MAH employee benefits office, told Dr. Scapicchio that MAH would continue to fund his retirement account, pursuant to the Retirement Plan, while he remained a disabled employee. See Scapicchio Aff., at ¶15. In fact, the Defendants never even notified Dr. Scapicchio that they considered his employment status with MAH to be terminated once he became disabled, even though they knew Dr. Scapicchio was a man suffering from a mental illness and nearing the age of retirement. Rather, the Defendants simply remained silent regarding Dr. Scapicchio's rights as a long-term vested employee under the Retirement Plan until October 15, 2002, when Dr. Scapicchio's August 12, 2002 letter finally forced them to tip their collective hand. Given these circumstances, it becomes abundantly clear, as a matter of fact, law, and equity, that no potentially applicable statute of limitations accrued until, at the earliest, October 15, 2002, when the Defendants finally informed Dr. Scapicchio – for the first time – that he allegedly was not entitled to employer retirement contributions for any period following his disability.

---

[1] See Defendant's Memorandum in Support of Summary Judgment, at page 9.

## CONCLUSION

For the reasons set forth above, Dr. Scapicchio respectfully moves this Honorable Court to deny, in its entirety, the motion for summary judgment filed by the Defendants, which pertains only to Dr. Scapicchio's ERISA claim.

Respectfully submitted,

**ANTHONY P. SCAPICCHIO, M.D.**
By his attorney,

/s/ John S. Day
_____
John S. Day (BBO #639249)
167 Washington Street
Norwell, MA 02061
781-878-6541 (telephone)
781-846-0780 (facsimile)
jday@attorneyday.com (electronic mail)

Date:   February 4, 2005

## CERTIFICATE OF SERVICE

I, John S. Day, hereby certify that on the 4th day of February, 2005, I caused a copy of the foregoing to be served, by electronic filing, upon Philip M. Cronin, Peabody & Arnold, 30 Rowes Wharf, 6th Floor, Boston, Massachusetts 02110.

/s/ John S. Day
_____
John S. Day