UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11573-RWZ

ANTHONY P. SCAPICCHIO, M.D., )
        Plaintiff, )
)
v. )
)
MOUNT AUBURN PROFESSIONAL )
SERVICES, a Massachusetts non- )
profit corporation, MOUNT AUBURN )
HOSPITAL, a hospital incorporated )
in Massachusetts, for itself and as )
administrator of the Mount Auburn )
Hospital RetirementPlus 403(b) )
Plan, and THOMAS FABIANO, )
        Defendants. )
)

## AFFIDAVIT OF PLAINTIFF ANTHONY P. SCAPICCHIO, M.D.

I, Anthony P. Scapicchio, M.D., hereby state under oath as follows:

1. I am, by training and experience, an emergency room medical physician, and I make this affidavit based upon my personal knowledge of the facts recited herein. I am competent to testify regarding the facts set forth in this affidavit.

2. I became an employee of Mount Auburn Hospital ("MAH") on or about September 1, 1974, and I have attached, as Exhibit A, a true and complete copy of an August 6, 1974 letter I received from MAH confirming my employment.

3. The August 6, 1974 letter I received from MAH, which is attached hereto as Exhibit A, suggested that I "submit [my] credentials for appointment to the medical staff in the division of surgery."

4. I followed the suggestion that I submit my credentials to the medical staff, and I was appointed to the MAH courtesy medical staff on October 31, 1974. I have

attached, as Exhibit B, a true and complete copy of an October 31, 1974 letter I received, which confirmed my appointment to the courtesy medical staff.

5. My status as an employee of MAH was, at all times, separate and distinct from my appointment to the medical staff. In other words, I could and, in fact, did, remain an employee of MAH even after I was no longer an appointed member of the medical staff.

6. My appointment to the MAH medical staff appointment was on a year-to-year basis, subject to the discretion of the MAH medical staff executive committee and the MAH board of trustees.

7. On October 28, 1975, approximately one year after I was initially appointed to the MAH courtesy medical staff, I was promoted to the active medical staff, with the rank of assistant surgeon in the MAH Department of General Surgery. I have attached, as Exhibit C, a true and complete copy of an October 28, 1975 letter that confirmed my promotion to the active medical staff.

8. The MAH medical staff operated, at all times relevant to this litigation, under a separate set of MAH medical staff by-laws that were separate and distinct from MAH's employment agreement with me.

9. At all times relevant to this litigation, any licensed physician was eligible to seek appointment to the MAH medical staff, regardless of whether the physician was an employee of MAH.

10. MAH established, on January 1, 1990, a defined contribution, individual account retirement plan retirement plan known as the RetirementPLUS Plan ("the

2

Retirement Plan") for its eligible employees, including me. I have attached, as Exhibit D, a true and complete copy of the Retirement Plan.

11. The Retirement Plan provides that MAH will make an employer contribution, based upon percentage of salary, into an employee's retirement account, but the Retirement Plan makes no provision for employer contributions for paid leave of absence.

12. In January 1995, I took an emergency 20-week medical leave of absence from my duties at MAH, due to progressive major depression; my last date of work at MAH was January 12, 1995.

13. On April 20, 1995, as a result of my lack of improvement while on my 20-week emergency medical leave of absence, and upon the recommendation of MAH employees, I applied for long term disability status pursuant to the long term disability plan provided by MAH to its employees ("the LTD Plan"), including me.

14. My application for long-term disability status under the LTD Plan was approved, and my long-term disability benefits were effective as of April 13, 1995, in light of the 90-day waiting period required under the LTD plan. Under the terms of the LTD plan, the 90-day waiting period commenced when I began my emergency medical leave of absence from MAH on January 13, 1995.

15. At the time I applied for long-term disability status under the LTD Plan, my 20-week emergency medical leave of absence had expired, and I had been informed by Nancy Stryker, an administrator in the MAH employee benefits office, that

        MAH would continue to fund my retirement account, pursuant to the Retirement Plan, while I remained a disabled employee.

16. I remained an employee of MAH, albeit a disabled employee, until December 18, 2002, when I reached my 65th birthday.

17. On February 8, 1996, I resigned my appointment to the MAH medical staff, pursuant to the medical staff by-law that required such a resignation following a leave of absence of more than one year. My medical staff resignation letter, a true and complete copy of which is attached hereto as Exhibit E, explicitly stated that I was resigning from the "medical staff," and my resignation from the medical staff had no bearing upon my employment status with MAH.

18. Although my disability benefits under the LTD Plan commenced in April 1995, MAH continued to fund my retirement account through employer contributions, in accordance with the Retirement Plan, through my account statement period ending in September 1995. I have attached, as Exhibit F, a true and complete copy of my Fidelity Investment retirement account statements for the period of January 1, 1995 through September 30, 1995.

19. The contributions made by MAH to my retirement account from January through September 1995 do not constitute contributions for my 20-week paid leave of absence, which expired in April 1995. Further, and as noted above, the Retirement Plan contains no provision for making contributions into my retirement account for a paid leave of absence.

20. The defendants in this litigation wrongfully failed to fund my retirement account in accordance with the terms of the Retirement Plan after I became disabled in

1995, and this failure by the defendants to satisfy their obligations under the Retirement Plan has caused my retirement account to be underfunded.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS ___ DAY OF FEBRUARY 2005.

*/s/ Anthony P. Scapicchio, MD*
Anthony P. Scapicchio, M.D.

Feb. 3, 2005

CERTIFICATE OF SERVICE

I, John S. Day, hereby certify that on the 4th day of February, 2005, I caused a copy of the foregoing to be served, by electronic filing, upon Philip M. Cronin, Peabody & Arnold, 30 Rowes Wharf, 6th Floor, Boston, Massachusetts 02110.

/s/ _____
John S. Day

5