UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB -4  A 10: 47

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| ANTHONY P. SCAPICCHIO<br><br>Plaintiff<br><br>v.<br><br>MOUNT AUBURN PROFESSIONAL<br>SERVICES, MOUNT AUBURN HOSPITAL,<br>as administrator of the Mount Auburn Hospital<br>RetirementPlus 403(b) Plan, and THOMAS<br>FABIANO<br><br>Defendants | CIVIL ACTION NO. 04-11573-RWZ |

## SUPPLEMENTAL AFFIDAVIT OF THE DEFENDANTS IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I, Thomas Fabiano, being duly sworn, hereby depose on oath as follows:

1.      I am Director of Human Resources at Mount Auburn Hospital, 330 Mount Auburn Street, Cambridge, Massachusetts 02138.

2.      I am authorized to submit this affidavit in behalf of the defendants Mount Auburn Professional Services and Mount Auburn Hospital RetirementPlus 403(b) Plan which are collectively hereinafter referred to as "Mount Auburn."

3.      This affidavit is made on personal knowledge.  The facts set forth in this affidavit would be admissible in evidence.  I am competent to testify to the matters stated herein because I am director of Human Resources at Mount Auburn and as such reviewed the claim for benefits made on August 12, 2002 by Anthony P. Scapicchio, hereinafter "Scapicchio."

4.      Nancy Stryker was an employee in the Mount Auburn Benefits office during the mid-1990s.  She is no longer employed by Mount Auburn Hospital.

5.      She was not at any time part of Mount Auburn management.

6. She was not at any time a fiduciary either of the Long Term Disability Plan or the RetirementPlus 403(b) Plan.

7. Stryker was also not Plan Administrator for either the RetirementPlus 403(b) Plan or the Long Term Disability Plan. I am the Plan Administrator and fiduciary for the RetirementPlus 403(b) Plan.

8. According to the terms of the RetirementPlus 403(b) Plan, "the hospital can amend this plan at any time." The Plan Administrator is not granted authority to amend the Plan.

9. Nancy Stryker did not at any time have authority to bind Mount Auburn Professional Services, Mount Auburn Hospital, the Long Term Disability Plan, or the RetirementPlus 403(b) Plan.

10. Even if Nancy Stryker made the statement attributed to her by Scapicchio, namely that Mount Auburn Hospital would make defined contributions to Scapicchio's RetirementPlus 403(b) Plan based on his Long Term Disability Plan benefits, she was not authorized on behalf of the hospital or the RetirementPlus 403(b) Plan to make such statements.

11. For the period January 13, 1995 – June 20, 1995, Scapicchio was on a 20 week medical leave of absence from Mount Auburn for which he received compensation from Mount Auburn. A true and accurate copy of a printout from Mount Auburn's computer payroll system showing the compensation received by Scapicchio during 1995 is attached hereto as Exhibit A.

12. Mount Auburn made contributions to Scapicchio's RetirementPlus 403(b) Plan based on the medical leave of absence compensation. These contributions are reflected in Scapicchio's statements from Fidelity Investments.

13. After June 30, 1995, Scapicchio received no further compensation from Mount Auburn. A true and accurate copy of a printout of Scapicchio's Earnings Summary from the

2

Mount Auburn computer payroll system showing that he received no compensation from 1996-2002 is attached hereto as Exhibit B.

14.     Scapicchio received benefits from Liberty Life Assurance Co. ("Liberty") for long term disability during the period January 13, 1995 - December 19, 2002. Liberty's payments began on April 13, 1995.

15.     Liberty is the fiduciary of the long term disability plan. None of the defendants in the present case were fiduciaries of the long term disability plan at any time.

16.     Liberty terminated Scapicchio's long term disability benefits on April 13, 1997. A true and accurate copy of a Liberty statement showing payments through April 13, 1997 is attached hereto as Exhibit C.

17.     When Liberty restored his long term disability benefits in January 1998, Scapicchio was back paid benefits for the period April 13, 1997 through January 31, 1998. A true and accurate copy of a Liberty statement showing that long term disability benefits were restored and back paid in January 1998 is attached hereto as Exhibit D.

18.     Scapicchio received two W-2 statements from Mount Auburn hospital in 1995. Both are attached to Plaintiff's Statement of Undisputed Material Facts as Exhibit S.

19.     One of Scapicchio's 1995 W-2 forms reflects income in box 1 in the amount of $74,246.24. This income is compensation Scapicchio received from Mount Auburn Hospital for services performed prior to his disability and for his 20 week medical leave of absence. Mount Auburn made contributions to Scapicchio's RetirementPlus 403(b) Plan based on this income.

20.     Scapicchio's second 1995 W-2 reflects income in box 1 in the amount of $10,039.66 and income in box 12 labeled "Sick Pay" in the amount of $64,883.18. This W-2 statement reflects Scapicchio's long term disability benefits received directly from Liberty. The

3

portion of the benefit which is taxable appears in box 1; the portion of his benefit which is not taxable appears in box 12.

21.     In 1996, Liberty operated from two separate claims databases. For this reason, Liberty provided two W-2 statements to Scapicchio. A true and accurate copy of a letter from Liberty explaining this situation is attached as Exhibit E.

22.     One of Scapicchio's 1996 W-2 forms reflects income in box 1 in the amount of $3,780.91 and income in box 12 labeled "Sick Pay" in the amount of $24,434.81. This W-2 statement reflects Scapicchio's long term disability benefits received directly from Liberty. No pay received from Mount Auburn is included in this statement. The portion of the Scapicchio's long term disability benefit which is taxable appears in box 1; the portion of the benefit which is not taxable appears in box 12.

23.     Scapicchio's other 1996 W-2 form reflects income in box 1 in the amount of $12,182.00 and income in box 12 labeled "Sick Pay" in the amount of $78,728.46. This W-2 statement reflects Scapicchio's long term disability benefits received directly from Liberty. No pay received from Mount Auburn is included in this statement. The portion of the Scapicchio's long term disability benefit which is taxable appears in box 1; the portion of the benefit which is not taxable appears in box 12.

24.     Scapicchio's 1997 W-2 form reflects income in box 1 in the amount of $4,327.03 and income in box 12 labeled "Sick Pay" in the amount of $27,964.29. This W-2 statement reflects Scapicchio's long term disability benefits received directly from Liberty. No pay received from Mount Auburn is included in this statement. The portion of the Scapicchio's long term disability benefit which is taxable appears in box 1; the portion of the benefit which is not taxable appears in box 12.

4

25.    The amounts on the 1997 W-2 statement reflect the fact that Liberty terminated Scapicchio's long term disability benefits on April 13, 1997.

26.    Scapicchio's 1998 W-2 form reflects income in box 1 in the amount of $26,130.43 and income in box 12 labeled "Sick Pay" in the amount of $168,872.93. This W-2 statement reflects Scapicchio's long term disability benefits received directly from Liberty. No pay received from Mount Auburn is included in this statement. The portion of the Scapicchio's long term disability benefit which is taxable appears in box 1; the portion of the benefit which is not taxable appears in box 12.

27.    The amounts on the 1998 W-2 reflect the fact that Liberty restored Scapicchio's long term disability benefits in January 1998 and back paid him for that portion of 1997 during which he did not receive benefits.

28.    Scapicchio's 1999 W-2 form reflects income in box 1 in the amount of $14,626.02 and income in box 12 labeled "Sick Pay" in the amount of $94,523.34. This W-2 statement reflects Scapicchio's long term disability benefits received directly from Liberty. No pay received from Mount Auburn is included in this statement. The portion of the Scapicchio's long term disability benefit which is taxable appears in box 1; the portion of the benefit which is not taxable appears in box 12.

29.    Scapicchio's 2000 W-2 form reflects income in box 1 in the amount of $15,064.80 and income in box 12 labeled "Sick Pay" in the amount of $97,359.06. This W-2 statement reflects Scapicchio's long term disability benefits received directly from Liberty. No pay received from Mount Auburn is included in this statement. The portion of the Scapicchio's long term disability benefit which is taxable appears in box 1; the portion of the benefit which is not taxable appears in box 12.

30.    Scapicchio's 2001 W-2 form reflects income in box 1 in the amount of $15,516.72 and income in box 12 labeled "Sick Pay" in the amount of $15,516.72. This W-2 statement reflects Scapicchio's long term disability benefits received directly from Liberty. No pay received from Mount Auburn is included in this statement. The portion of the Scapicchio's long term disability benefit which is taxable appears in box 1; the portion of the benefit which is not taxable appears in box 12.

31.    Scapicchio's 2002 W-2 form reflects income in box 1 in the amount of $15,977.38 and income in box 12 labeled "Sick Pay" in the amount of $103,256.72. This W-2 statement reflects Scapicchio's long term disability benefits received directly from Liberty. No pay received from Mount Auburn is included in this statement. The portion of the Scapicchio's long term disability benefit which is taxable appears in box 1; the portion of the benefit which is not taxable appears in box 12.

This affidavit is made under the penalties of perjury this 2nd day of February, 2005.


_Thomas Fabiano_
Thomas Fabiano