UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11573-RWZ

ANTHONY P. SCAPICCHIO, M.D.

v.

MOUNT AUBURN PROFESSIONAL SERVICES,
MOUNT AUBURN HOSPITAL and THOMAS FABIANO

MEMORANDUM OF DECISION

August 9, 2005

ZOBEL, D.J.

     Plaintiff Dr. Anthony Scapicchio began to work at Mount Auburn Hospital ("Hospital") in 1974. On July 4, 1991, he signed an employment agreement with Mount Auburn Professional Services, Inc. ("MAPS"), which, in turn, had an arrangement with the Hospital to provide emergency medical, teaching, and administrative services in the Hospital's Department of Emergency Medicine. The employment agreement, which was by its terms renewed annually, provided a benefit plan, that included the RetirementPLUS Plan (the "Plan"). Under the Plan, the Hospital contributed to the retirement accounts of eligible employees, including plaintiff. The Hospital's contribution was calculated as a percentage of the employee's pay.

     Plaintiff worked regularly at the Hospital until January 12, 1995, when he took a twenty-week medical leave of absence. Because his medical condition did not improve, plaintiff applied for long-term disability benefits on April 20, 1995, and resigned from the medical staff on February 8, 1996. He received long-term disability

payments until he turned 65 years old in December 2002.[1]  Plaintiff claims that on August 2, 2002, he learned for the first time that the Hospital had stopped contributing to his retirement account as of July 1995.

Thereafter, on July 14, 2004, plaintiff filed suit in this Court against MAPS, the Hospital, and the Plan administrator, Thomas Fabiano.  Plaintiff claims that defendants erroneously failed to contribute to his retirement account in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*, Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq,* and Massachusetts General Laws, Chapter 151B.  All parties have moved for summary judgment.

ERISA "authorizes a participant to bring an action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'"  Fenton v. John Hancock Mutual Life Insurance Co., 400 F.3d 83, 87 (1st Cir. 2004), quoting 29 U.S.C. § 1132(a)(1)(B).  The statute "directs the district court to confine its analysis to the terms of the plan."  Id.  Denial of benefits under an ERISA plan is subject to *de novo* review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the administrator has such authority, the denial is subject to a deferential arbitrary and capricious standard of review.  Leahy v. Raytheon Co., 315 F.3d 11, 15 (1st Cir. 2002)(citation

---

[1] The parties disagree about whether there was a cessation of long-term benefits for a span of time in 1997.  However, that factual dispute is irrelevant to the disposition of the pending motions.

and quotation marks omitted). Here, paragraph 6.2 of the Plan, as amended and restated effective January 1, 1995, provides that the

> administrator has full discretion to interpret and apply any plan provision and can adopt reasonable rules and regulations for the administration of the plan. The administrator's decisions are binding unless plainly wrong or clearly unfair.

Pl.'s Aff. at Exh. D. Therefore, the standard of review is deferential.

Paragraph 2.3 states that the Hospital will contribute a percentage of the eligible employee's pay "to accounts established with the approved insurance or investment companies . . . ." Pl.'s Aff. at Exh. D. Pay is defined as:

> all compensation received by you from the hospital during the pay periods that you participate [sic] for the performance of services including overtime pay, shift deferential, bonuses and incentive pay. It does not include reimbursed expenses, taxable fringe benefits or any other items not constituting direct compensation for services.

Id. The long-term disability insurance is clearly a fringe benefit. The question then is whether plaintiff's long-term disability payments were taxable and, thus, excluded from the definition of "pay" under the Plan. When an employee receives insurance payments as a result of sickness, and the employer has paid the premiums, such payments shall be included in employee's taxable income. See 26. U.S.C. § 105(a). Paragraph 1.1 states that the Plan was established by the Hospital "for the benefit of its employees and the employees of Mount Auburn Foundation, Inc. and [MAPS] (together, [Mount Auburn Hospital])." Id. For the purposes of the Plan, MAPS and the Hospital are interchangeable as plaintiff's employer. According to the summary of benefits attached to plaintiff's employment agreement, the Hospital paid the premiums

3

for the long-term disability insurance. Pl.'s Stat. of Undisputed Facts at Exh. D. Thus, the disability payments were taxable as part of plaintiff's income. Therefore, plaintiff's long-term disability payments are explicitly excluded from the definition of "pay" under the Plan. Plaintiff was not entitled to employer contributions to his retirement account based on his receipt of long-term disability payments.

    Accordingly, plaintiff's motion for summary judgment is denied; defendant's motion for summary judgment is allowed.

|  |  |
|---|---|
| _____<br>DATE | /s/ Rya W. Zobel<br>RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |