UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY P. SCAPICCHIO<br>Plaintiff<br><br>v.<br><br>MOUNT AUBURN PROFESSIONAL<br>SERVICES, MOUNT AUBURN HOSPITAL,<br>as administrator of the Mount Auburn Hospital<br>RetirementPlus 403(b) Plan, and THOMAS<br>FABIANO<br>Defendants | CIVIL ACTION NO. 04-11573-RWZ |

**AFFIDAVIT OF THE DEFENDANTS IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

I, Thomas Fabiano, being duly sworn, hereby depose on oath as follows:

1. I am Director of Human Resources at Mount Auburn Hospital, 330 Mount Auburn Street, Cambridge, Massachusetts 02138.

2. I am authorized to submit this affidavit in behalf of the defendants Mount Auburn Professional Services and Mount Auburn Hospital RetirementPlus 403(b) Plan which are collectively hereinafter referred to as "Mount Auburn."

3. This affidavit is made on personal knowledge. The facts set forth in this affidavit would be admissible in evidence. I am competent to testify to the matters stated herein because I am director of Human Resources at Mount Auburn and as such reviewed the claim for benefits made on August 12, 2002 by Anthony P. Scapicchio, hereinafter "Scapicchio."

4. A copy of the RetirementPlus 403(b) Plan is attached hereto as Exhibit A.

5. The Long Term Disability Plan was a taxable fringe benefit provided by Mount Auburn within the meaning of the term as it is used in the RetirementPlus 403(b) Plan.

6. The portion of insurance payments attributable to premiums paid by Mount Auburn for basic coverage were taxable to Scapicchio at the time they were received.

7. The portion of insurance payments attributable to premiums paid by Scapicchio for supplemental coverage were paid in after tax dollars.

8. Liberty Mutual became the plan provider of the Long Term Disability Plan at Mount Auburn in October, 1994.

9. Mount Auburn paid premiums for basic coverage for Scapicchio. This coverage provided for a 180 day waiting period followed by insurance payments which amounted to 60% of base salary at the time of disability, subject to a cap on payments of $15,000. per month.

10. Scapicchio elected to pay out-of-pocket premiums in after-tax dollars for supplemental coverage. The supplemental coverage which Scapicchio purchased reduced his waiting period to 90 days and increased his insurance payments to 70% of his salary at the time of disability, subject to a cap on payments of $15,000 per month.

11. Relying on the advice of a consulting actuary and in accordance with governing tax law, Mount Auburn calculated the taxable and non-taxable portions of Scapicchio's long term disability payments.

12. At the time of his disability, Mount Auburn paid $.29 per $100 of salary for basic coverage for Scapicchio. Scapicchio's annualized salary at that time was $161, 221.00 Consequently, on an annualized basis, Mount Auburn paid $467.54 in premiums.

13. In 1995, Scapicchio paid $1.87 per $100 of salary for supplemental coverage. Scapicchio's annualized salary at that time was $161,221.00. On an annualized basis, Scapicchio paid $3014.96 per year for supplement coverage.

14. A true and accurate copy of the rate table in effect in 1994-95 is attached hereto as Exhibit B. It shows that the base rate for supplemental coverage was $1.87 per $100 in salary for

employees who were between 55 and 65 years of age. Scapicchio was between 55 and 65 years of age.

15. A true and accurate copy of payroll records showing the payroll deductions for supplemental coverage premiums paid by Scapicchio is attached hereto as Exhibit C.

16. Consequently, at the time of his disability, Scapicchio paid 86.6% of the premiums for his policy, so 86.6% of the insurance payments he received was not taxed. Mount Auburn paid 13.4% of the premiums, so 13.4% of the insurance payments he received was taxed.

17. A letter from Mount Auburn's consulting actuary confirming this calculation is attached hereto as Exhibit D.

18. The portion of payments which were taxable at the time they were received appears in box 1 of Scapicchio's W-2 forms, as detailed in my Supplemental Affidavit filed in connection with this litigation and incorporated by reference herein.

19. The portion of payments which were attributable to premiums paid by Scapicchio in after tax dollars appears in box 12 on Scapicchio's W-2 forms, as detailed in my Supplemental Affidavit.

This affidavit is made under the penalties of perjury this 24th day of August, 2005.

                                                                  */s/ Thomas Fabiano*
                                                                   Thomas Fabiano

621209_1
5436-90871

A

# RETIREMENTPLUS

A Retirement Plan for Employees
of Mount Auburn Hospital

As amended and restated effective January 1, 1995

## ARTICLE I

## INTRODUCTION

1.1 <u>Establishment of Plan</u>. This is the plan document for RetirementPLUS (the "plan") which is a retirement savings plan established by Mount Auburn Hospital for the benefit of its employees and the employees of Mount Auburn Foundation, Inc. and Mount Auburn Professional Services, Inc. (together, the "hospital"). The plan was established January 1, 1990 and has been amended from time to time as set forth on Schedule A.

1.2 <u>Description of Plan</u>. The plan is a tax deferred annuity plan and is intended to meet the requirements of Section 403(b) of the Internal Revenue Code of 1986 (the "Code"). It is a type of defined contribution, individual account plan. The plan is also intended to meet the applicable provisions of the Employee Retirement Income Security Act of 1974 ("ERISA").

1.3 <u>Plan Contributions</u>. The plan provides for contributions by the hospital and voluntary contributions by participants. In general, hospital contributions are made for employees (others than students) who are regularly scheduled to work at least 20 hours per week, have reached age 21 and have worked at the hospital for at least two years. The amount of the contribution is a percentage of pay based on your years of employment with the hospital. Voluntary contributions may be made by any employee. Any voluntary contributions will be tax deferred for federal income tax purposes and will increase your retirement savings.

1.4 <u>Plan Benefits</u>. The hospital's contributions and any of your voluntary contributions to the plan are invested in a group annuity contract issued by an approved insurance company or in mutual funds issued by an approved investment company, as directed by you. When you leave employment with the hospital and upon certain other specified events, you will be entitled to receive benefit payments from your accounts.

1.5 <u>Vesting</u>. Your accounts under the plan are fully vested and non-forfeitable at all times.

## ARTICLE II

## HOSPITAL CONTRIBUTIONS

2.1 <u>Eligibility</u>. In order to receive hospital contributions, you must be an eligible employee and satisfy an age and service requirement. All employees who are regularly scheduled to work at least 20 hours per week are eligible, except for persons whose employment is incidental to an educational program at the hospital (such as interns, residents, fellows and radiology students). You may begin participation in the plan once you have reached age 21 and have a total of two years of employment as an eligible employee, whether or not consecutive. To the extent provided in Schedule B, employment with a predecessor employer will be treated as employment with the hospital. See Section 8.2 for a special participation rule for employees who have service with the hospital as an ineligible employee and later become eligible.

2.2 <u>Enrollment</u>. In order to begin participation, you must complete an enrollment form directing the investment of hospital contributions with an approved insurance or investment company. You may also need to complete an application form for each approved insurance and investment company you select. Once you are eligible, contributions will become effective as of the first payroll period following

participate in the plan of another employer, you may file a request to withdraw the excess with the administrator no later than March 1 following such calendar year. If your contributions for a calendar year exceed this limit because of administrative error under this plan, the excess contributions will be returned to you. You will receive the excess contributions by the April 15 following the request, together with earnings allocable to the excess contributions. In addition, the total of your voluntary contributions, and the hospital contributions on your behalf (if eligible), may not exceed your exclusion allowance under Code Section 403(b) for the year or the limits under Code Section 415. At the discretion of the administrator, voluntary contributions that exceed these limits may be returned to you.

3.3 Salary Reduction Agreement. To make voluntary contributions, you must complete an enrollment form specifying the percentage of your pay that will be contributed to the plan on a salary reduction basis and directing the investment of your voluntary contributions with an approved insurance or investment company. You may also need to complete an application form for each approved insurance or investment company you select for the investment of contributions. You may change the percentage you contribute by completing a new salary reduction agreement. You may not make a change in the year you join the plan and may make only one such change in any other year. However, at any time you may revoke your salary reduction agreement and suspend voluntary contributions to the plan by written notice to the administrator. If you have revoked a salary reduction agreement, you may not make voluntary contributions again until the next year.

3.4 Transfers. Whether or not you are eligible for hospital contributions under Article II, you may transfer to the plan amounts from Code Section 403(b) annuities or custodial accounts established by other employers for whom you have worked. To make a transfer, you must complete an enrollment form which will direct the investment of your contribution with an approved insurance or investment company. You may also need to complete an application form and transfer forms for each approved insurance or investment company you select for the investment of contributions. If you make a transfer and are not eligible for hospital contributions under Article II, you will be considered a participant with respect to such transfer only.

## ARTICLE IV

## INVESTMENT OF CONTRIBUTIONS

4.1 Designation of Insurance and Investment Companies. The hospital will select one or more insurance companies or investment companies to serve as investment media under the plan. Each insurance company selected by the hospital will offer one or more annuity contracts for the investment of contributions that qualify under Code Section 403(b). In connection with the selection of an investment company, the hospital will also select a custodian to establish custodial accounts that qualify under Code Section 403(b)(7) to hold shares of the investment company in which contributions are invested. The hospital may also approve specific investment funds offered by the insurance or investment companies to participants. The hospital may change its choice of insurance or investment companies and investment funds at any time. However, any amounts you have invested at the time of the change will remain so invested unless you elect to transfer the amount to the new investments selected by the hospital.

4.2 Investment Directions. You must direct the investment of the hospital contributions made on your behalf, and any voluntary contributions or transfers made by you, with one or more of the approved insurance or investment companies. You may change your investment directions for future contributions at any time. In addition, to the extent permitted by the insurance or investment companies,

witnessed by a plan representative or notary public. Consent is not required if you can establish that you are not married or that your spouse cannot be located.

If you are not married and do not choose another form of payment, your accounts will be used to purchase an annuity from an insurance company providing monthly payments for life with no payments made after your death.

5.4 Distribution Upon Death. If you die before you have begun receiving benefits under the plan, your beneficiary will receive the amount in your accounts. You may designate one or more beneficiaries and may change beneficiaries at any time by written notice to the administrator. Any amount not paid to a designated beneficiary for any reason will be paid to your spouse if living, then to your children in equal shares (or their issue), and otherwise to your estate.

If you are married, your spouse must be the beneficiary for at least 50% of your account balances. If you are over age 35 or if you no longer work for the hospital, you may designate your spouse to receive less than 50% of your account balances if your spouse consents in writing to the designation. The consent must acknowledge the effect of the consent and must be witnessed by a plan representative or notary public. Consent is not required if you can establish that you are not married or that your spouse cannot be located.

If you die after payments begin but before the complete distribution of your accounts, your designated beneficiary or beneficiaries will receive the amount remaining in your accounts. If your accounts were used to purchase an annuity, this is considered a complete distribution of your accounts and the rights of any beneficiary upon your death will be determined in accordance with the terms of the annuity.

5.5 Withdrawal of Contributions While Working. Except for required distributions after age 70 1/2, you may not withdraw or receive a distribution of the hospital's contributions or earnings while you are working for the hospital.

Once you reach age 59 1/2, you may withdraw all or any portion of the voluntary contributions and earnings credited to your accounts at any time. If you are younger than age 59 1/2 and are still working for the hospital, you may withdraw up to the amount of the voluntary contributions and earnings held under an annuity contract as of December 31, 1988 at any time. In addition, you may withdraw the voluntary contributions (but not earnings) credited to your accounts on or after January 1, 1989 if you have a financial hardship as a result of one of the following needs:

(a) uninsured medical expenses incurred by you, your spouse or a dependent;

(b) purchase of your principal residence (not including mortgage payments);

(c) tuition payments for the next 12 months of post-secondary education for you or your spouse, children or dependents;

(d) rent or mortgage payments needed to prevent eviction from or foreclosure on the mortgage on your principal residence.

To be eligible for a hardship withdrawal you must provide evidence that you have an immediate and heavy need for money and that the withdrawal is necessary to meet the need. The withdrawal is necessary to meet the need only if you are unable to meet the need through other resources such as

will render its decision on review promptly and in writing and will include specific reasons for the decision and references to the plan provision on which the decision is based.

6.4 Named Fiduciaries. The hospital and the administrator will be the named fiduciaries of the plan. Except as provided in ERISA Section 405(a) no fiduciary other than a named fiduciary is liable for any act or omission of any fiduciary other than himself, and except as provided in ERISA Section 405(c)(2) no named fiduciary is liable for the act or omission of any other named fiduciary or of any other fiduciary or person to whom responsibilities have been delegated.

## ARTICLE VII

## AMENDMENT AND TERMINATION

7.1 Amendment of Plan. The hospital can amend this plan at any time. However, no amendment can reduce the amount credited to your accounts or retroactively eliminate an optional form of benefit, except as permitted by law.

7.2 Termination of Plan. The hospital has established the plan with the intention that it will continue the plan indefinitely. However, the hospital reserves the right to terminate the plan or to permanently stop making contributions at any time. If the plan is terminated, you will retain all rights you have under any annuities or custodial accounts that you have.

## ARTICLE VIII

## MISCELLANEOUS

8.1 Plan Year. The plan year is the initial 9-month period from January 1, 1990 to September 30, 1990 and subsequent 12-month periods ending September 30 of each year.

8.2 Employment in Ineligible Class. If you are eligible but have service with the hospital as an ineligible employee, you may begin participation in the plan on the date you have reached age 21 and have completed two "years of service" with the hospital even though you may not have completed two years of employment as an eligible employee. A "year of service" is each separate 12-month period (beginning on the date you start work and each anniversary of that date) in which you have 1,000 "hours of service". An "hour of service" means:

(a) Each hour for which you are paid, or entitled to payment, for the performance of duties for the hospital. These hours will be credited for the computation period in which the duties are performed;

(b) Each hour for which you are paid, or entitled to payment, by the hospital on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence. No more than 501 hours of service will be credited under this paragraph for any single continuous period (whether or not such period occurs in a single computation period). Hours under this paragraph will be calculated and credited pursuant to section 2530.200b-2(b) and (c) of the Department of Labor Regulations which are incorporated by reference; and

## SCHEDULE A

### Amendments to Plan

A.1    The plan was established effective as of January 1, 1990.

A.2    The plan was amended and restated by the First Amendment as follows:

    (a)    Effective with respect to distributions made on or after January 1, 1993, to add provisions permitting direct rollovers of eligible rollover distributions.

    (b)    Effective as of January 1, 1994, to reduce the maximum amount of compensation that may be taken into account under the plan to $150,000, as indexed.

    (c)    Effective as of January 1, 1995, to provide for recognition of pre-participation service for certain designated predecessor employers.

## ADDITIONAL INFORMATION

The foregoing plan document, together with this additional information, constitutes the summary plan description for RetirementPLUS.

<u>Plan Sponsor and Plan Administrator</u>

Mount Auburn Hospital
330 Mount Auburn Street
Cambridge, Massachusetts 02238

Telephone number:   (617) 492-3500
Employer Identification Number:  04-2103606

The hospital is the "plan administrator" as that term is defined in ERISA. Service of process may be made on the administrator or the hospital.

<u>Funding Vehicles</u>

Contributions under RetirementPLUS may be invested with either of the following carriers as directed by you:

| | |
|---|---|
| UNUM Life Insurance Company | Fidelity Investments |
| 2211 Congress Street | 82 Devonshire Street |
| Portland, Maine  04122 | Boston, Massachusetts  02109 |

<u>Basic Plan Information</u>

Type of Plan:  Code Section 403(b) defined contribution plan

Plan Year:  September 30                Plan Number:  002

<u>PBGC Insurance</u>

Your accounts under the plan are not insured by the Pension Benefit Guaranty Corporation ("PBGC") because the PBGC does not insure defined contribution plans like RetirementPLUS.

**B**

```
                    View P/P Table Values Dictionary

Table            LTD2           Frequency  WEEKLY

Effective Date  10/01/94        Status    S


Input Expression
> AGE
>

Lower Limit      Base         Plus %
         0       0.10            0
        25       0.19            0
        30       0.23            0
        35       0.35            0
        40       0.59            0
        45       0.91            0
        50       1.41            0
        55       1.87            0
        65       1.80            0
```



C

```
RUN DATE: 08/22/05              Mount Auburn PP System **LIVE**                    PAGE 1
RUN TIME: 1053                          PERIOD INQUIRY
RUN USER: HR.TF
```

**WITHHOLDINGS DETAIL (Tax and Other)**

**1994 WHOLDINGS**

029815  SCAPICCHIO, ANTHONY P

| | PAY DATE | TC DATE | EMPLOYEE | EMPLOYER | (ON BASE) |
|---|---|---|---|---|---|
| LTD2 | 10/06/94 | 10/01/94 | 55.75 | | 2981.20 |
| | 10/13/94 | 10/08/94 | 55.75 | | 2981.20 |
| | 10/20/94 | 10/15/94 | 55.75 | | 2981.20 |
| | 10/27/94 | 10/22/94 | 55.75 | | 2981.20 |
| | 11/03/94 | 10/29/94 | 55.75 | | 2981.20 |
| | 11/10/94 | 11/05/94 | 55.75 | | 2981.20 |
| | 11/17/94 | 11/12/94 | 55.75 | | 2981.20 |
| | 11/23/94 | 11/19/94 | 55.75 | | 2981.20 |
| | 12/01/94 | 11/26/94 | 55.75 | | 3221.20 |
| | 12/08/94 | 12/03/94 | 55.75 | | 3131.20 |
| | 12/15/94 | 12/10/94 | 55.75 | | 2981.20 |
| | 12/22/94 | 12/17/94 | 55.75 | | 3221.20 |
| | 12/29/94 | 12/24/94 | 55.75 | | 2981.20 |
| LTD2 TOTAL | | | 724.75 | | 39385.60 |
| SCAPICCHIO, ANTHONY P | | | 724.75 | | 39385.60 |
| **1994 TOTAL** | | | 724.75 | | 39385.60 |

**1995 WHOLDINGS**

029815  SCAPICCHIO, ANTHONY P

| | PAY DATE | TC DATE | EMPLOYEE | EMPLOYER | (ON BASE) |
|---|---|---|---|---|---|
| LTD2 | 01/05/95 | 12/31/94 | 55.75 | | 3101.20 |
| | 01/12/95 | 01/07/95 | 55.75 | | 2981.20 |
| | 01/19/95 | 01/14/95 | 57.98 | | 3219.60 |
| | 01/26/95 | 01/21/95 | 57.98 | | 3100.40 |
| | 02/02/95 | 01/28/95 | 57.98 | | 3100.40 |
| | 02/09/95 | 02/04/95 | 57.98 | | 3100.40 |
| | 02/16/95 | 02/11/95 | 57.98 | | 3100.40 |
| | 02/23/95 | 02/18/95 | 57.98 | | 3100.40 |
| | 03/02/95 | 02/25/95 | 57.98 | | 3100.40 |
| | 03/09/95 | 03/04/95 | 57.98 | | 3100.40 |
| | 03/16/95 | 03/11/95 | 57.98 | | 3100.40 |
| | 03/23/95 | 03/18/95 | 57.98 | | 3100.40 |
| | 03/30/95 | 03/25/95 | 57.98 | | 3100.40 |
| | 04/06/95 | 04/01/95 | 57.98 | | 3100.40 |
| | 04/13/95 | 04/08/95 | 57.98 | | 3100.40 |
| | 04/20/95 | 04/15/95 | 57.98 | | 3100.40 |
| | 04/27/95 | 04/22/95 | 57.98 | | 3100.40 |
| | 05/04/95 | 04/29/95 | 57.98 | | 3100.40 |

```
RUN DATE: 08/22/05            Mount Auburn PP System **LIVE**              PAGE 2
RUN TIME: 1053                      PERIOD INQUIRY
RUN USER: HR.TF
```

WITHHOLDINGS DETAIL (Tax and Other)

| | | | |
|---|---|---|---|
| 05/11/95 | 05/06/95 | 57.98 | 3100.40 |
| 05/18/95 | 05/13/95 | 57.98 | 3100.40 |
| 05/25/95 | 05/20/95 | 57.98 | 3100.40 |
| 06/01/95 | 05/27/95 | 57.98 | 3100.40 |
| 06/08/95 | 06/03/95 | 57.98 | 3100.40 |
| 06/15/95 | 06/10/95 | 57.98 | 3100.40 |

```
  LTD2 TOTAL                         1387.06              74410.40

  SCARICCHIO, ANTHONY P              1387.06              74410.40

1995 TOTAL                           1387.06              74410.40

GRAND TOTAL                          2111.81             113796.00
```

D

BUCK CONSULTANTS, INC     16 POST OFFICE SQUARE     BOSTON, MA 02109

# Facsimile Cover Sheet

**To:** Linda Ferraresso
**Company:** Mount Auburn Hospital
**Phone:** 499-5169
**Fax:** 499-5168

**From:** Keith J. Dallas
**Company:** Buck Consultants, Inc.
**Phone:** (617)350-6006
**Fax:** (617)350-5446

**Date:** 10/20/95
**Pages including this cover page:** 2

**Comments:** Linda, attached is my revised letter describing how to calculate the employee paid portion of LTD benefits. Please call with questions.

**CONFIDENTIAL**
THIS TELECOPY TRANSMISSION HAS CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE ADDRESSEE. If you are not the addressee or someone delivering it to the addressee, you are hereby notified that any distribution or copying of this material is strictly prohibited. If you have received this transmission in error, please notify us immediately by phone.

BUCK CONSULTANTS





**BUCK CONSULTANTS**
10 Post Office Square Suite 600N
Boston, Massachusetts 02109-4603

October 20, 1995

Ms. Linda Ferraresso
Director of Compensation and Benefits
Mount Auburn Hospital
330 Mount Auburn Street

RE: Taxation of LTD Benefits-Revised Example

Dear Linda:

The purpose of this letter is to describe how the portion of LTD benefits taxable to disabled employees should be calculated.

Basically, regulations say that you should use a three policy year look back to determine what percentage of the benefit the individual paid for ( and since it was paid for with after tax dollars is therefore not taxable income to the employee). In a simple example, therefore, if an individual was paying $1.87 per $100 of monthly salary with the Hospital paying a $.29 rate for basic coverage, you would calculate that the employee is paying 87% (i.e. $1.87 divided by the sum of $.29 plus $1.87).

In real life, the calculation can be more complex since your rates change by age brackets. If the person has been in the same age bracket for the last 3 policy years (or plan inception, if shorter), the above method applies. However if the individual has been in two brackets, you should adjust the percentage for the relative time periods in each bracket. For instance if the person has been 5 months in the current bracket and 2 years 7 months in another bracket, calculate the percentage for each bracket and then take 14 % of the last percentage (i.e. 5 months divided by 36 months), and 86% of the earlier percentage.

The percentage calculated above should then be given to Liberty Mutual. They will report the taxable income to the recipient, and make proper withholding etc. If the payment begins after 3 months of disability, there also will be Hospital and employee FICA taxes payable for the first 3 months of payments.

Please give me a call if you have any questions about the above.

Sincerely,

Keith

Keith J. Dallas, FSA
Consulting Actuary

Buck Consultants, Inc.
617|350-6006   Fax 617|350-5446